United States District Court
Southern District of Texas
**ENTERED**
June 07, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § CRIMINAL ACTION NO. 4:20-CR- |
| VS. | § 00501 |
| | § |
| JUSTIN MOUTON | § |

## MEMORANDUM & ORDER

Justin Mouton is charged with possessing a firearm after being convicted of a felony. The Court must now determine whether to dismiss the indictment for violations of the Speedy Trial Act. The Court finds that only 63 non-excludable days have elapsed. Although dismissal is not warranted, a detailed narrative of the delay is.

### I. BACKGROUND AND FACTUAL FINDINGS

Mr. Mouton made his initial appearance on February 9, 2021. *See* 2/9/2021 Minute Entry. The same day, the federal public defender was appointed to represent Mr. Mouton. ECF No. 8. On February 18, 2021, Magistrate Judge Peter Bray signed an Order of Detention Pending Trial. ECF No. 16. Mr. Mouton filed several unopposed continuances, resulting in consecutive periods of excludable delay lasting until March 14, 2022.

On March 14, 2022, Mr. Mouton filed an Unopposed Motion for Determination of Mental Competence to Stand Trial. ECF No. 27. The Court granted the Motion and ordered Mr. Mouton committed to the custody of the Attorney General for a reasonable period not to exceed 30 days for placement in a suitable facility where a psychological or psychiatric examination could be conducted. ECF No. 28 at 1.

Mr. Mouton arrived at the Metropolitan Detention Center, Los Angeles (MDC-LA) on April 28, 2022. ECF No. 95-1. There was a quarantine period, and he was medically cleared for

1

the evaluation to start on May 4, 2022. *Id.* A forensic psychologist completed the psychological evaluation on July 8, 2022. *Id.* Mr. Mouton was returned to Houston on July 21, 2022, and placed in the Joe Corley Detention Facility. ECF No. 95-3. No mental health services were provided to Mr. Mouton while he was housed at Joe Corley. The forensic psychologist's report was filed with the Court on July 26, 2022. ECF No. 33.

On August 18, 2022, the Court held a hearing on the competency issue and determined that Mr. Mouton was then mentally incompetent. 8/18/2022 Minute Entry. The Court committed Mr. Mouton to the custody of the Attorney General for a period of time not to exceed four months to restore mental competency. ECF No. 34.

Then, nothing happened. Mr. Mouton was not transferred to a competency restoration facility. Neither BOP nor the government attorney communicated to the Court the reason for the delay. Nor did they communicate that there was or would be a delay in the first place. On September 27, 2022, an individual from the U.S. Marshals Service responded to an email request sent by Mr. Mouton's attorney, informing him that the "movement request has been processed," and "[o]n average it can take anywhere from 8-12 weeks until a bed is made available as space at the federal medical centers is limited." ECF No. 35 at 3. This would have placed Mr. Mouton's expected admission date roughly between October 18, 2022, and November 15, 2022.[1]

In light of this already-significant delay, Mr. Mouton filed a Motion for an Order Requiring Immediate Hospitalization or to Dismiss with Prejudice on October 4, 2022. ECF No. 35. The Court held two hearings on the Motion. On October 13, 2022, the Court ordered the Attorney General to hospitalize Mr. Mouton within seven days. ECF No. 38.

---

[1] This approximation is based on the request date of August 23, 2022. ECF No. 35 at 3.

2

The government did not comply with the Court's Order. Seven days came and went. Mr. Mouton was not transferred to an appropriate facility. Nor was there any effort to provide mental health services to Mr. Mouton while he was at Joe Corley. The government made no further representations or communications to the Court. Instead, Mr. Mouton languished in prison, receiving no mental health treatment at all.

On December 22, 2022, Mr. Mouton filed a Motion to Dismiss. ECF No. 39. Mr. Mouton argued that the extended pretrial detention violated his due process rights. *Id.* at 3-6. He further argued that the indictment should be dismissed for violation of the Speedy Trial Act, *id.* at 7-9, and asked that any dismissal be with prejudice, *id.* at 9-13. The government responded, representing that Mr. Mouton could "expect a bed in March or April of 2023." ECF No. 40 at 5.

On January 13, 2023, the Court held a hearing on the Motion to Dismiss. 1/13/2023 Minute Entry. Adopting the reasoning of other courts in *United States v. Donnelly*, 41 F.4th 1102 (9th Cir. 2022) and *United States Leusogi*, No. 2:21-CR-32-TS, 2022 WL 16855426 (D. Utah Nov. 10, 2022), the Court found that the extensive delay in this case violated Mr. Mouton's due process rights. ECF No. 43. Perhaps foolishly optimistic that the government would heed an order from the Court in this case after it had already disregarded two prior orders, the Court again issued an order on February 6, 2023. This time, the Court ordered the Attorney General to hospitalize Mr. Mouton within 45 days or it would dismiss the indictment. *Id.*

At subsequent hearings, the government attempted either to relitigate or gloss over the fact that this Court has already found a due-process violation. In light of the government's intentional blindness to that finding, the Court must linger on that finding, recognizing that the due-process issue has already been decided and is not the focus of this Order.

Lest the government choose again to ignore this Court's finding, the Court must reiterate: Mr. Mouton's due process rights have been violated. It is not a close question. After Mr. Mouton was found to be incompetent, he sat in jail for nine months, during which time no steps were taken to restore him to competency.

In *Jackson v. Indiana*, 406 U.S. 715, 738 (1972), the Supreme Court held that indefinite commitment of a criminal defendant who was not competent to stand trial violated that defendant's due process rights. "At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Id.* Here, there is no reasonable relation between any conceivable purpose and the nine months that Mr. Mouton spent incarcerated without conviction for any crime, having been declared incompetent but receiving no competency restoration treatment.

True, there are bureaucratic difficulties. BOP has represented that there is insufficient bedspace and inadequate staffing at its medical facilities. But "[i]nsufficient staffing or facilities to which to transfer defendants do not constitute good cause to excuse lengthy detention, nor do the Bureau's efforts to improve its competency services generally excuse the continued detention of" Mr. Mouton. *United States v. Carter*, 2019 WL 9410160, at *2 (E.D. Wisc. Oct. 16, 2019) (cleaned up). To find that logistical hurdles excuse a due process violation would render the Due Process Clause meaningless. The same rationale would permit governments to underfund prisons, criminal defense, or courts, and then have a ready excuse for the series of due process violation after due process violation that would inevitably ensue. Here, excusing the delay would let BOP detain an individual month after month, even though that individual has been convicted of no crime, and no progress is being made toward trial. The Due Process Clause means more than this.

With the 45-day deadline running out on the Court's February 6, 2023, Order, the government moved for reconsideration. ECF No. 58. On March 22, 2023, the Court issued an Order staying the effects of its prior Order. ECF No. 60. The Court reiterated its finding that Mr. Mouton's due process rights had been violated. It scheduled weekly status conferences to determine what the appropriate remedy for the violation would be.

Status conferences were held on March 27, 2023, and April 3, 2023. The Court heard twice from Dr. Dia Boutwell, BOP's Chief of Psychological Evaluations, and once from Laura Manis, the medical director at Joe Corley, where Mr. Mouton was being held. From these hearings it became clear that the due process violations are systemic, not individual; that BOP's efforts to reduce wait times are clearly inadequate because wait times are continuing to increase (for example, Mr. Mouton's projected admission date had been pushed back from "March or April" to May 18); and that Mr. Mouton had not received any mental health treatment while waiting to be admitted to a competency restoration program at the United States Medical Facility in Springfield Missouri (USMCFP Springfield). *See generally* ECF No. 66 (Order); ECF Nos. 73, 74 (Trs.).

On March 31, 2023, an individual from the U.S. Marshals Service informed the Court that Mr. Mouton would be transferred on April 7, 2023. The Court misinterpreted this statement to mean that Mr. Mouton would be transferred to USMCFP Springfield on this date. Thus, the Court issued an Order explaining that it was "informed that Mr. Mouton will be transferred to USMCFP Springfield on April 7, 2023," and converted the April 3, 2023, hearing to a telephonic hearing. ECF No. 67. The Court began the April 3 hearing by expressing its "relie[f] . . . that there is a bed that will soon be available to Mr. Mouton." ECF No. 80 at 3. Despite these two statements and the government's full knowledge that Mr. Mouton would *not* be transferred to USMCFP Springfield

5

on April 7,[2] the government did not correct the Court's misapprehension. Mr. Mouton's attorney also believed that Mr. Mouton would be transferred to USMCFP Springfield on April 7.

On April 20, 2023, Mr. Mouton filed a Motion for Emergency Status Conference. ECF No. 69. Only on that day, and only in response to several communication attempts by Mr. Mouton's attorney, did Mr. Mouton's attorney learn that Mr. Mouton had been transferred not to USMCFP Springfield, but to the Grady County Jail in Oklahoma, which is not a mental health facility but only a waystation.

The Court held an Emergency Status Conference on April 24, 2023. It held subsequent status conferences on May 1, 2023, and May 8, 2023. It also received written declarations from both Dr. Boutwell, ECF No. 89, and Mario Campos of the U.S. Marshals Service, ECF No. 88-1. After the initial Emergency Conference, the primary goal of these follow-up conferences was to determine the appropriate remedy in this case.

The Court offers only a brief summary of some of its findings from these hearings and declarations.

First, the wait times for individuals awaiting competency restoration treatment have increased dramatically in recent years. *See* ECF No. 89-1. From May 2020 until April 2021, the wait times remained largely constant, at around 100 days (just over three months). *Id.* Starting in May 2021, the wait times began to rise dramatically, reaching 211 days (nearly seven months) in April 2022. *Id.* The projected wait times in August of 2022 (when Mr. Mouton was ordered to competency restoration treatment) averaged 242 days (just under eight months). *Id.* Mr. Mouton's actual wait time was nine months. By May of 2023, the wait times had risen to 331 days (just under 11 months). *Id.* All told, from May 2020 until May 2023, the wait times more than tripled.

---

[2] Inexplicably, the US Marshals Service provided a full transfer schedule to the prosecutors in this case, but did not provide any similar schedule to either the Court or Mr. Mouton's attorney.

Second, this Court is not the only court distressed by these wait times. From May 2021 until May 2023, Dr. Boutwell testified about these delays on 17 occasions to federal courts in nine states. ECF No. 89. During this same period, she submitted written declarations about these delays on 35 occasions to federal courts in 23 states and the District of Columbia. *Id.* But the widespread concern by courts about these prevalent delays has not resulted in any reduction of wait times.

Third, BOP's efforts to reduce wait times have had little discernable effect on all but a very small subset of individuals. BOP touts the opening of prison-based competency restoration programs at Chicago and Lexington. These programs have much shorter wait times than the other three programs housed at medical facilities (USMCFP Springfield, FMC Butner, and FMC Devens). *See* ECF No. 89. But the vast majority—75%—of individuals who need competency restoration services are not eligible for the Chicago or Lexington programs. ECF No. 80 at 16-17. And after these two programs opened, wait times for the medical facilities continued to increase. The Chicago program became fully operational in January 2023, ECF No. 85 at 22, and the "small and, hopefully, temporary restoration program" opened at Lexington in October 2022, ECF No. 93 at 17. But from December 2022 (just before the Chicago program opened) until now, the projected wait times have increased by 51 days, and since September 2022 (just before the Lexington program opened), projected wait times have increased by 85 days. *See* ECF No. 89-1.

After these status conferences, the Court determined that dismissal was not an appropriate remedy for the due process violation, provided that Mr. Mouton's May 18 admission date remained. ECF No. 90. This was a highly situation-specific determination based on the facts of Mr. Mouton's arrest. The Court nonetheless remains concerned about the lack of remedy for the violation of Mr. Mouton's rights.

7

At the May 8, 2023, hearing, Mr. Mouton reasserted his Speedy Trial Act claim. The Court ordered supplemental briefing. ECF No. 91. That briefing is now complete. ECF Nos. 95, 96, 98.

## II.  ANALYSIS

The only issue now before the Court is whether there has been a Speedy Trial Act violation in this case. The Speedy Trial Act provides:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1).

If this timeline is not met, "the information or indictment shall be dismissed on motion of the defendant." Id. § 3162(a)(2). This provision "mandat[es] dismissal of the indictment upon violation of [the] precise time limits." *United States v. Taylor,* 487 U.S. 326, 343-344 (1988).

Certain time periods are excludable from the 70–day Speedy Trial Act limitation. These periods are laid out in 18 U.S.C. § 3161(h). Individual exclusions are discussed below where relevant. All parties agree that the 26-day period between February 17, 2021, and March 16, 2021, is not excludable. *See* ECF No. 95 at 1-2; ECF No. 98 at 8. The question is whether any other non-excludable period pushes the delay in this case above the 70-day period allowable under the Speedy Trial Act.

### A.  August 18, 2022, through the Present

The first question is whether the days subsequent to August 18, 2022, are excludable pursuant to the Speedy Trial Act. On this date, the Court found that Mr. Mouton was mentally incompetent to stand trial. 18 U.S.C. § 3161(h)(4) provides that, when counting time under the

Speedy Trial Act, courts shall exclude "[a]ny period of delay resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial."

The government argues that the delay in Mouton's admission to Springfield fall under this provision. Mouton disagrees, arguing that the delay in his admission is due to the government's failures to provide him a bed, not his own mental incompetence, and that the nine-month delay in transporting him to Springfield is unreasonable under 18 U.S.C. § 3161(h)(1)(F), which provides that "delay from transportation . . . to or from places of examination" that are "in excess of ten days . . . shall be presumed to be unreasonable."

Put simply, the question is as follows. Does the delay in Mouton's transportation to and admission at a competency restoration delay "result[] from" his "mental incompten[cy]"? If it does, the delay is excludable pursuant to § 3161(h)(4). Or, does it instead constitute an unreasonable transportation delay under §3161(h)(1)(F)? If this provision, rather than (h)(4) governs, then all days in excess of ten would be non-excludable unless an "extraordinary event or circumstance" can "rebut the presumption that [the delay] was unreasonable." *United States v. Castle*, 906 F.2d 134, 138 (5th Cir. 1990).

### 1.   Background: *United States v. Castle* and 18 U.S.C. § 3161(h)(1)(A)

Neither the Fifth Circuit nor the Supreme Court has answered this question. The closest that either court has come was in interpreting the interaction between § 3161(h)(1)(F) (the provision governing transportation delays) and a separate provision that excludes "delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant." 18 U.S.C. § 3161(h)(1)(A).[3]

---

[3] Subsection 3161(h)(1)(A) is inapplicable here because this provision applies only to competency *evaluation*—"determin[ing] . . . mental competency"—and not to competency *restoration*. *See United States v. Romero* 833 F.3d 1151, 1154 (9th Cir. 2016).

9

In *Castle*, 906 F.2d at 138, the Fifth Circuit addressed the interaction between these provisions and held that the defendant's Speedy Trial Act rights were violated as a result of unreasonable transportation delays that occurred while transporting the defendant to his psychiatric competency examination. And, although the Supreme Court has not addressed this question directly, it too has held that the Speedy Trial Act was violated as a result of transportation delays that occurred while transporting a defendant to his competency evaluation. *See United States v. Tinklenberg*, 563 U.S. 647, 661-63 (2011) (transportation delays violated Speedy Trial Act); *United States v. Tinklenberg*, 579 F.3d 589, 596-97 (6th Cir. 2009) (explaining that the transportation delays in question occurred while transporting defendant to competency evaluation).

Whether transportation delays on the way to competency evaluation count toward the Speedy Trial Act's time limits is a question that has divided circuits. *Compare United States v. Williams*, 917 F.3d 195, 202 (3d Cir. 2019) (transportation delays to psychological examinations are not excludable); *United States v. Noone*, 913 F.2d 20, 25-26 (1st Cir. 1990) (same); *and Tinklenberg*, 579 F.3d at 596 (same) *with United States v. Vasquez*, 918 F.2d 329, 333 (2d Cir. 1990) (such delays are excludable). Given the binding Fifth Circuit authority articulated in *Castle*, however, this Court does not delve into this division further because the Fifth Circuit's decision that such delays *can* violate the Speedy Trial Act is binding on this Court.

With that background in mind, the Court now turns to the present question: whether delays in transporting individuals to competency restoration facilities are excludable. This question, too, has divided courts. In the absence of binding authority, the Court analyzes the rationale presented by each line of cases to determine which is more persuasive.

## 2. Analysis

As discussed above, the relevant question is whether the current delay "result[s] from" transportation of Mr. Mouton to a place of hospitalization or whether the delay "result[s] from" the fact that Mr. Mouton is mentally incompetent. Courts analyzing this question have largely adopted one of three different modes of analysis, finding either that (1) the delay results from the defendant's incompetence; (2) the delay results from delayed transportation of the defendant to the place of hospitalization; or (3) the delay results from both of these causes.

First, some courts have held that the delay is caused by the defendant's incompetence. Incompetent defendants cannot be tried. *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996). Thus, courts have reasoned that, after an initial determination finding that a defendant is mentally incompetent, any delay in competency restoration necessarily results from the defendant's incompetence because the trial cannot take place while the defendant is incompetent. *United States v. Romero*, 833 F.3d 1151, 1155 (9th Cir. 2016).

Put differently, efficient transportation to a competency restoration program could result in a defendant's competency being restored. But delayed transportation does not push the trial; rather, it pushes back a return to competency, and the fundamental reason that trial cannot take place is due to the defendant's incompetence, which triggers § 3161(h)(4). *See United States v. Kabinoto*, No. CR-09-1079-PCT-DGC, 2009 WL 2358946, at *2 (D. Ariz. July 31, 2009); *United States v. Hatter*, No. 14-cr-1811, 2015 WL 1511015, at *3-4 (S.D. Cal. Mar. 19, 2015) ("[T]he delay in [a defendant]'s trial has not been caused by the lack of bedspace or an error by the Clerk's office; the reason that [the defendant] cannot be tried at this time is a result of his mental incompetence.").

Other courts have disagreed, finding that the delay results from a failure to timely transport the defendant. These Courts have explained:

> Admittedly, Defendant would not have needed the transportation but for this Court's finding of incompetence, but it is also true that Defendant could have been receiving treatment sooner—and may have been restored to competence (or found not restorable to competence) more quickly—but for the error. Simply put, the reason for the *delay* in this case was not "resulting from" Defendant's mental condition, although that may have been a necessary condition for the delay to occur.

*United States v. Dellinger*, 980 F. Supp.2d 806, 812 (E.D. Mich. 2013); *see United States v. Black*, No. 21-CR-009-GKF, 2022 WL 17170707, at *6 (N.D. Okla. Nov. 22, 2022) ("Although Mr. Black would not have needed the transportation to FMC Butner had he not been found incompetent, he would have been receiving care and treatment and may have been restored to competence sooner had he been promptly transported."); *United States v. Hernandez-Amparan*, 600 F. Supp. 2d 839, 843 (W.D. Tex. 2009) (finding the delay "is a result of the failure to transport Defendant for treatment").

Finally, a last group of courts have found that the delay results from **both** transportation delay and the fact that a defendant is mentally incompetent. *See, e.g.*, *United States v. Lewis*, 484 F. Supp. 2d 380, 390-91 ("[T]o the extent there was unreasonable delay in transporting Defendant to USMCFP, the delay was also independently attributable to his state of incompetency and that time is fully excludable under § 3161(h)(4).").

These courts have explained that, when there are two reasons for a delay, one of which is excludable under the Speedy Trial Act and one of which is not, that time is nonetheless excludable. For example, the Eleventh Circuit has explained that "[a]ccording to the statute's plain language, any qualifying delay is excludable, regardless of whether it would or would not qualify under a different subsection of a statute," so "if a defendant is mentally incompetent under § 3161(h)(4), that time is excludable even if there is also a transportation delay that is unreasonably long and

12

thus not excludable under § 3161(h)(1)(F)." *United States v. Pendleton*, 665 F. App'x 836, 839 (11th Cir. 2016) (per curiam); *United States v. Beler*, No. 19-mj-100 (BAH), 2019 WL 5789747, at *13 (D.D.C. Nov. 6, 2019) (recognizing that a delay may have more than one cause); *United States v. McCall*, No. 1:21-CR-00474-UNA, 2022 WL 19561433, at *4 (N.D. Ga. Dec. 12, 2022) (explaining that the "unreasonably long delay for transportation to [competency restoration]" is "not excludable under § 3161(h)(1)(F), but "is excludable under § 3161(h)(4).").

The Court finds these last set of cases the most persuasive. Both a finding of incompetency and the delayed transportation are a necessary precondition for the trial to be delayed. It is true that an incompetent defendant cannot be tried. But it is also true that Mr. Mouton may very well have been restored to competency absent BOP's delay.

The Speedy Trial Act's text and structure make clear that, when delays have multiple causes, they must be excluded. As a starting point, all days are counted. But § 3161(h) lists periods that shall be excluded. And only one provision has to be triggered for time to be excluded. So, it does not matter that a certain provision *is not* triggered—it only matters that a separate provision *is* triggered. Subsection 3161(h)(1)(F) does not exclude the time at issue. But § 3161(h) does exclude the time. Only one provision is needed.

This interpretation also accords with the broad language of (h)(4). Subsection 3161(h)(4) provides that "*any* period of delay resulting from the fact that the defendant is mentally incompetent" "*shall* be excluded." 18 U.S.C. § 3161(h)(4) (emphasis added). From this language, other courts have reasoned that "[o]n its face, this provision is absolute; any period during which a trial cannot commence because of a defendant's incompetence must be excluded." *Romero*, 833 F.3d at 1154; *see United States v. Castrellon*, No. 22-cr-00112-CMA-GPG, 2023 WL 2330688, at *4 (D. Colo. Mar. 1, 2023) ("18 U.S.C. § 3161(h)(4)'s language is clear that the toll results from

13

'the fact that the defendant is mentally incompetent,' and does not condition its application on whether the defendant is or is not receiving treatment under § 4241(d)."); *United States v. Morales*, No. CR 07-147-TUC-RCC, 2008 WL 552662, at *3 (D. Ariz. Feb. 27, 2008) ("[T]he unequivocal language of 18 U.S.C. § 3161(h)(4) excludes the period of time a defendant is deemed to be incompetent to stand trial, whatever the reason for delay may be.").

It is true that this outcome requires the Court to read § 3161(h)(4) differently from the Fifth Circuit's reading of § 3161(h)(1)(A). In *Castle*, 906 F.2d at 138, the Fifth Circuit held that delays in transporting a prisoner to or from a competency evaluation were not excludable because they exceeded the reasonableness restriction on transportation days contained in § 3161(h)(1)(F). The Fifth Circuit reached this conclusion notwithstanding (h)(1)(A)'s exclusion of "delay resulting from . . . any examinations[] to determine the mental competency of a defendant."

Differences in the text of § 3161(h)(1)(A) and § 3161(h)(4) readily explain why § 3161(h)(4) applies more broadly. In *Beler*, 2019 WL 5789747, at *12, the court explained: "To the extent that subsection (h)(1)(A) requires ongoing proceedings to be triggered, the conspicuous lack of any such requirement in subsection (h)(4) confirms that all time after a finding of incompetence is excludable, regardless of whether any effort is being made to restore competence." Put differently, (h)(1)(A)'s exclusion extends to only the proceeding itself, whereas (h)(4)'s exclusion applies to the full period of incompetency.

It is also true that the delay in transporting Mr. Mouton to Springfield is unequivocally unreasonable. After the finding of incompetency, it took *nine months* to transport Mr. Mouton to Springfield. BOP delayed Mr. Mouton's transfer notwithstanding three court orders directing the transfer to occur, including two which had firm deadlines. This delay is, quite frankly, appalling. And the delay becomes more, not less, egregious when the Court considers that comparable delay

is the norm for all prisoners in Mr. Mouton's situation and that, despite BOP's purported attempts to ameliorate these delays, they have only increased. *See* ECF No. 89-1. As the Fifth Circuit has explained, "[o]rdinary institutionalized delay is not an excuse," and the government must point to an "extraordinary event or circumstance to rebut the presumption that time over ten days transporting" a defendant is unreasonable. *Castle*, 906 F.2d at 138 (cleaned up).

In some cases, courts have imported a reasonableness restriction into their analysis of such situations. Subsection 3161(h)(4) lacks an explicit reasonableness restriction, but §3161(h)(1)(F) *does* contain such a restriction. And the reason for the reasonableness restriction in § 3161(h)(1)(F) stemmed from "a Congressional desire that the Marshals Service not delay transporting prisoners for economic reasons." *Dellinger*, 980 F. Supp. 2d at 813. Thus, in *Dellinger*, the court reasoned that eliminating this restriction for mentally incompetent individuals would mean that "the U.S. Marshals Service could delay transporting *incompetent* detainees for economic reasons without recourse under the Speedy Trial Act," a result that "Congress could not reasonably have intended." *Id.* at 813. Rather, these courts have reasoned that "to draw a line based on a finding of incompetence would be to say that Congress intended to protect those that were not yet deemed incompetent, while essentially ignoring those previously declared incompetent." *Id.*

Although this Court recognizes these inequities, it is persuaded by the reasoning of courts that have rejected the application of such a reasonableness limitation. Subsection (h)(4) contains no such reasonableness limitation in its text. In contrast, other provisions—most notably § 3161(h)(1)(F)—explicitly have a reasonableness limitation. It is wrong to read into the statute a reasonableness limitation where none exists. *See Hatter*, 2015 WL 1511015, at *5; DeGideo, 2004 WL 120669, at *4; *United States v. Robles-Otanez*, No. 19-cr-296, 2020 WL 6321575, at *3 (E.D. Pa. Oct. 28, 2020).

Finally, the Court is unpersuaded by reasoning adopted by some courts found that § 3161(h)(1)(F) is more specific than § 3161(h)(4), and therefore (h)(1)(F) controls. *See United States v. Sparks*, 885 F. Supp.2d 92, 101 (D.D.C. 2012); *Black*, 2022 WL 17170707, at *6. In these courts' views, allowing § 3161(h)(4) to exclude transportation delays after a finding of incompetency would render § 3161(h)(1)(F) "mere surplusage." *Sparks*, 885 F. Supp.2d at 101 (citation omitted); *accord Black*, 2022 WL 17170707, at *6; *Hernandez-Amparan*, 600 F. Supp. 2d at 843.

This Court disagrees. Subsection 3161(h)(1)(F) still has meaning. First, "the reference in subsection (h)(1)(F) to 'hospitalization' is significantly broader than just hospitalization for restoration to competence." *Beler*, 2019 WL 5789747, at *13. Second, "subsection (h)(1)(F) still acts as a limit to excludable transportation delays in connection with competency evaluations covered by subsection (h)(1)(A)." *Id.* Thus, under this Court's interpretation of the interplay between (h)(1)(F) and (h)(4), both provisions have independent effect.

Thus, the Court reads § 3161(h)(4) to exclude from the Speedy Trial clock all time during which a defendant is mentally incompetent. Thus, all time from August 18, 2022, until the present is excludable under the Speedy Trial Act.

### B. March 15, 2022, through July 21, 2022

Going back in time, the parties also dispute how much of the time between March 15, 2022, until July 21, 2022, is excludable. This period follows the Court's order committing Mr. Mouton to the custody of the Attorney General for a competency evaluation. Mr. Mouton argues that seventy-three days of this time period should be counted. The government disagrees.

The relevant timeline for this period is as follows. On March 14, 2022, the Court ordered that Mr. Mouton be transferred to a facility where psychological or psychiatric examination could

16

be conducted. ECF No. 28. Mr. Mouton arrived at the Metropolitan Detention Center, Los Angeles (MDC-LA) on April 28, 2022. ECF No. 95-1. There was a quarantine period, so he was medically cleared for the evaluation to start on May 4, 2022. *Id.* The psychological evaluation was completed on July 8, 2022. *Id.* Mr. Mouton was returned to Houston on July 21, 2022. ECF No. 95-3.

First, the Court considers the period from March 15 until Mr. Mouton's arrival at MDC-LA on April 28, 2022. This is a 44-day period. Under *Castle*, 906 F.2d at 138, only ten of these days are excludable. Thus, there are 34 non-excludable days.

Next, the Court considers the period from when Mr. Mouton arrived at MDC-LA until the start of his psychiatric evaluation. This quarantine period lasted one week. It is unclear whether this period of time should be counted in the transportation period, (h)(1)(F), or in the competency evaluation period, (h)(1)(A). Either way, it is excludable. If it counts under (h)(1)(F), the need for quarantine due to the COVID-19 emergency is the type of "extraordinary event or circumstance" that "rebut[s] the presumption" that the entirety of the transportation duration past ten days is unreasonable. If this time instead counts under (h)(1)(A), it is also excludable because the quarantine period was necessary to ensure that the competency evaluation could safely proceed.

The Court next looks to the 66-day period during which the competency evaluation occurred: May 4, 2022, through July 8, 2022. Mr. Mouton contends that only 30 of these days should be excluded because the Court's Order provided for a 30-day evaluation period. Alternatively, Mr. Mouton contends that no more than 45 days of this period should be included because 18 U.S.C. § 4247(b) authorizes only a 15-day extension of the evaluation period. However, this argument goes against the significant weight of authority finding that the entire period associated with the competency evaluation is excluded, even if that period excludes the 30-

17

or 45-day limit. *See United States v.* Taylor, 353 F.3d 868, 869-70 (10th Cir. 2003) (collecting cases); *United States v. Murphy*, 241 F.3d 447, 455-56 (6th Cir. 2001) (same).

Finally, the Court looks at the period from July 8, 2022, when the evaluation was complete, until July 21, 2022, when Mr. Mouton was returned to Houston. This is a 13-day period. Ten days are excluded under § 3161(h)(1)(F). This leaves an additional three non-excludable days.

In total, there were 37 non-excludable days between March 15, 2022, and July 21, 2022.

### C. Speedy Trial Act Computation

Both parties agree that there were 26 non-excludable days from February 17, 2021, until March 16, 2021. On top of that, the Court finds that an additional 37 days between March 14, 2022, and July 21, 2022, are non-excludable. This adds up to 63 non-excludable days. Because this is less than the 70-day delay allowable under the Speedy Trial Act, the Court finds that no Speedy Trial Act violation has occurred.

### III. CONCLUSION

The Court finds that the days encompassed by Mr. Mouton's delayed admission to Springfield are excludable under the Speedy Trial Act. Thus, no Speedy Trial violation has occurred. Thus, the Court **DECLINES TO DISMISS** the Indictment in this case.

What has happened in this case is not just. BOP's institutionalized failure to provide competency restoration treatment in anything resembling a timely manner is systemic and widespread. Moreover, this failure is unlikely to be remedied soon unless BOP dramatically increases its woefully inadequate efforts to reduce these delays. The Court cannot turn a blind eye to the deep injustices in Mr. Mouton's case. For nine months, BOP did nothing to get Mr. Mouton restored to competency even while it was constitutionally and statutorily obligated (not to mention thrice ordered by this Court) to provide Mr. Mouton with treatment. Although the Court finds that

no Speedy Trial violation occurred, the Court remains concerned that justice has not been done in this case.

The recourse for individuals in his position properly lies with the Due Process Clause, and not the Speedy Trial Act. Based on the very specific factual circumstances present here, the due process violation did not warrant a dismissal in this case, but that decision was not an easy one to reach, and it certainly does not mean that the Court condones the excessive delays that deprived Mr. Mouton of the process to which he was due.

**IT IS SO ORDERED.**

Signed at Houston, Texas on June 7, 2023.

*(signature)*

Keith P. Ellison
United States District Judge