United States District Court
Southern District of Texas
**ENTERED**
April 08, 2024
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | **CRIMINAL ACTION NO. 4:20-CR-** |
| **VS.** | § | **00501** |
| | § | |
| **JUSTIN MOUTON** | § | |

## MEMORANDUM & ORDER

Before the Court is the question of whether Defendant Justin Mouton can be forcibly medicated for the purpose of restoring his competency to stand trial. On January 4, 2024, the Court issued a Memorandum & Order (the "January M&O") denying the government's application to involuntarily medicate Mouton pursuant to the standard set out in *Sell v. United States*, 539 U.S. 166 (2003).[1] ECF No. 108. The government now moves for reconsideration. ECF No. 110. For the reasons that follow, the Court finds that the Motion for Reconsideration should be **GRANTED IN PART** and **DENIED IN PART**.

### I.      MOTION FOR RECONSIDERATION STANDARD

Although not expressly permitted by rule or statute, both the Supreme Court and the Fifth Circuit have endorsed the use of motions for reconsideration in criminal cases. *See United States v. Cook*, 670 F.2d 46, 48 (5th Cir. 1982) (collecting cases). A motion for reconsideration is timely if filed "within the period allotted for the noticing of an appeal." *United States v. Cook*, 670 F.2d

---

[1] A full recounting of the facts of this case can be found in the January M&O.

46, 48 (5th Cir. 1982). Rule 4(b)(1)(B) gives the government 30 days from the entry of an appealable order to file a notice of appeal. Fed. R. App. P. 4(b)(1)(B).

A motion for reconsideration of an interlocutory order is generally evaluated under Rule 54(b) of the Federal Rules of Civil Procedure. *Cabral v. Brennan*, 853 F.3d 763, 766 (5th Cir. 2017); *United States v. Garay*, No. 3:19-CR-122-S, 2021 WL 807254, at *2 (N.D. Tex. Mar. 3, 2021). "Under Rule 54(b), the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017). However, "[t]he discretion to modify an interlocutory order does not eliminate 'the policy reasons behind discouraging motions for reconsideration which rehash the same arguments or, without justification, raise new arguments for the first time.'" *Caramba, Inc. v. Nationwide Mut. Fire Ins. Co.*, No. CV H-19-1973, 2021 WL 259388, at *2 (S.D. Tex. Jan. 26, 2021) (quoting *DAC Surgical Partners P.A. v. United Healthcare Servs., Inc.*, 2017 WL 3484507, *2 (S.D. Tex. Aug. 14, 2017)). Accordingly, courts must exercise their "broad discretion under Rule 54(b) sparingly to prevent the unnecessary reexamination of interlocutory orders with the resulting burdens, including expense and delay." *Caramba*, 2021 WL 259388, at *2.

## II.    ANALYSIS

The four-factor test set out in *Sell v. United States* controls whether the government may forcibly medicate a criminal defendant in the hopes of restoring competency for trial. 539 U.S. 166, 178 (2003). This standard is set out in detail in the January M&O. Relevant here is the first factor, which asks whether important governmental interests are at stake. *Id.* at 180. While the government has an important interest in prosecuting an individual accused of a serious crime,

special circumstances may diminish the importance of that interest. *Id*. One such special circumstance is whether "the defendant has already been confined for a significant amount of time." *Id.*

The government's Motion for Reconsideration addresses the Court's finding that special circumstances diminish the government's interest in prosecuting Mouton. The Court takes each of the government's arguments in turn.

### a. Interpretation of the Fifth Circuit's holdings in *Gutierrez* and *Harris*

The government first takes issue with the Court's interpretation of the Fifth Circuit's holdings in *United States v. Gutierrez*, 704 F.3d 442 (5th Cir. 2013) and *United States v. Harris*, 84 F.4th 596 (5th Cir. 2023). Both cases assessed whether the length of the respective defendants' confinement diminished the government's interest in prosecution under *Sell*. In doing so, the court in *Gutierrez* compared the length of Gutierrez's pretrial detention to the maximum sentence Gutierrez faced if convicted, while the court in *Harris* looked to Harris's likely sentence under the sentencing guidelines. A closer examination of each is warranted.

In *Gutierrez*, the district court ordered Gutierrez be forcibly medicated. *Gutierrez*, 704 F.3d at 447. On appeal Gutierrez argued, among other things, that the Fifth Circuit should reverse on the basis that he had already served a significant portion of his likely sentence under the applicable sentencing guideline range. *Id.* at 449. The court declined to do so, finding that "[i]t is not appropriate either to require a district court to conduct a mock sentencing hearing and select a provisional sentence at a *Sell* hearing, or to prematurely speculate about a defendant's possible sentence in an interlocutory appeal." *Id.* at 451. This follows from the fact that forcing the district court to apply the guidelines where it had elected not to do so would tread upon "the broad discretion of the district judge to impose a sentence outside the advisory guidelines range." *Id.*

Accordingly, the Fifth Circuit considered the statutory maximum in deciding Gutierrez's appeal.

*Id.*

*Harris* likewise arose out of a district court order compelling involuntary medication. *Harris*, 84 F.4th at 599. On appeal, the Fifth Circuit held that there were special circumstances diminishing the government's interest in prosecution. In relevant part the court found that

> [Harris] has been detained since his arrest on February 14, 2020. As of October 2023, he has been detained for almost 44 months. If the Government was allowed to forcibly medicate Harris, the psychiatrist indicated that it would take four-to-eight months before Harris could stand trial. So by the time of his hypothetical trial, Harris would have been incarcerated for 48 to 52 months. And that substantially exceeds the applicable Guidelines range for his offense, which is only 37 to 46 months.

*Harris*, 84 F.4th at 599. In doing so, the court took the opposite approach from that in *Gutierrez* and considered Harris's pretrial confinement with his likely sentence under the guidelines if convicted. Thus, the Court finds itself in the present conundrum of determining how to reconcile these cases. In the January M&O, the Court carefully analyzed both cases before coming to the conclusion that *Gutierrez* did not mandate general use of the statutory maximum, as evidenced by the analysis in *Harris*. As a result, the Court compared Mouton's pretrial confinement to his potential sentence under the guidelines.

In its Motion for Reconsideration, the government again urges to the Court to find that "*Gutierrez* does not permit the use of a hypothetical guideline range." ECF No. 110 at 9. However, the Court finds no such sweeping prohibition in the text of *Gutierrez*, nor is such a result consistent with *Harris*. That is, if *Gutierrez* stood for the broad proposition that courts must always use the statutory maximum, then the Fifth Circuit in *Harris* would have been obligated to apply the maximum. *See Collins v. City of Harker Heights, Tex.*, 916 F.2d 284, 291 (5th Cir. 1990) ("[W]e are bound by our controlling Fifth Circuit precedent.").

The government attempts to explain away this inconsistency by arguing that *Harris* used the guidelines (which, in the government's view, binding precedent does not permit) because the parties did not specifically brief whether the guidelines or the statutory maximum should be used, and thus the government in *Harris* "forfeited or waived the issue." [2] ECF No. 110 at 14. The Court declines to read waiver into an opinion that gives no indication that its analysis is contingent upon the parties waiving an argument. When the Fifth Circuit has declined to address an issue because of waiver, it has explicitly noted that fact. *See, e.g.*, *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998); *Garrison Prop. & Cas. Co. v. Silva*, 652 F. App'x 240, 241 n.2 (5th Cir. 2016); *Young v. City of Houston, Harris Cnty.*, 471 F. App'x 389, 390 (5th Cir. 2012). Likewise, in the rare instance where both parties' arguments hinge upon a legal standard that hasn't been endorsed by the Fifth Circuit, the court has been careful to note that it is applying, but not adopting, that standard. *See, e.g.*, *K.U. v. Alvin Indep. Sch. Dist.*, 166 F.3d 341 (5th Cir. 1998) ("The district court

---

[2] It is also unclear whether the briefing in *Harris* could be construed as waiving this issue. "We liberally construe briefs in determining issues presented for review; however, issues not raised *at all* are waived." *S.E.C. v. Recile*, 10 F.3d 1093, 1096 (5th Cir. 1993) (emphasis added). As this standard indicates, waiver is generally applied when a party omits to make any argument on a particular issue. *See, e.g.*, *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998) (affirming dismissal of Plaintiff's claim for lost jewelry under the Federal Tort Claims Act where Plaintiff made no arguments related to that claim on appeal); *Garrison Prop. & Cas. Co. v. Silva*, 652 F. App'x 240, 241 n.2 (5th Cir. 2016) (declining the disrupt the district court's summary judgment ruling on the defendant's counterclaims where the defendant did not address the counterclaims on appeal); *Young v. City of Houston, Harris Cnty.*, 471 F. App'x 389, 390 (5th Cir. 2012) (finding waiver where the plaintiff "neither discussed how the district court erred in its ruling nor did he provide any reasons, record citations, or legal authority in support of his claim"). Unlike in those cases, the government in *Harris* addressed at length whether the government had an important interest in prosecuting Harris and whether that interest was diminished by special circumstances like the amount of time already served. Brief of Appellee, the United States of America, *Harris*, 84 F.4th 596, 2023 WL 2775928, at *10-15. The government also made several arguments as to why the amount of time Harris had already served did not diminish the government's interest in prosecution. *Id.* *13. To be sure, the government only mentions the statutory maximum in describing how the government has an important interest in prosecution because Harris is charged with a "serious offense," and it did not argue that the court was required to apply the statutory maximum in looking at factors that diminish this interest. However, it is unclear as a matter of law whether this minor omission constitutes waiver such that the Fifth Circuit would apply a standard contrary to that allegedly set out in binding precedent. Ultimately, the Court will give the government the benefit of the doubt and proceed under the assumption that the parties in *Harris* did not sufficiently brief this issue.

correctly noted that this circuit has not adopted this requirement in § 504 cases. Nevertheless, we will apply the standard without adopting it because the arguments of both parties are explicitly predicated on it and no party has argued that it is not the correct standard."). Surely if *Gutierrez* mandated that courts *must* apply the statutory maximum, as the government contends it does, the Fifth Circuit in *Harris* would have either applied the maximum, given that *Gutierrez* is binding precedent, or at least mentioned that it was applying, but not adopting, a contrary standard. Yet, nowhere in *Harris* does the Fifth Circuit mention waiver or note that it is applying the incorrect standard.

Absent any textual support, the Court cannot accept the government's interpretation of *Harris*. Thus, the Court finds that the consideration of Mouton's likely sentence under the guidelines if convicted is appropriate in analyzing the first *Sell* factor. For the reasons set out in the January M&O, Mouton's lengthy pretrial confinement is sufficient to undermine the government's interest in prosecution.

**b.   Estimates of Mouton's Pretrial Detention**

In the January M&O, the Court opined that even if the statutory maximum were the proper comparator, Mouton is likely to have served a significant portion of it by the time he stands trial. In doing so, the Court estimated the maximum amount of time Mouton might be detained before his case reaches its conclusion. The government now argues that the Court erred in its estimates. This analysis was cabined to the hypothetical situation in which the Court applied the statutory maximum, and thus has no impact on the issue of whether involuntary medication is permissible. Nonetheless, the Court will respond to the government's arguments.

In analyzing the length of a defendant's pretrial detention under the first *Sell* factor, it is common for courts to consider not only how long the defendant has been confined so far, but also

how long the defendant might be detained before the conclusion of his case. Courts frequently consider how long it may take to restore competency, transfer the defendant to and from the treatment facility, appeal the *Sell* ruling, adjudicate pretrial motions, and ultimately complete trial and sentencing. *See, e.g.*, *United States v. Harris*, 84 F.4th 596, 599 (5th Cir. 2023); *United States v. Grigsby*, 712 F.3d 964, 974 (6th Cir. 2013); *United States v. White*, 620 F.3d 401, 414-15 (4th Cir. 2010); *United States v. Seaton*, 773 F. App'x 1013, 1018 (10th Cir. 2019); *United States v. Fieste*, 84 F.4th 713, 725 (7th Cir. 2023); *United States v. Almendarez*, 179 F. Supp. 3d 498, 505 (W.D. Pa. 2016); *United States v. Duncan*, 968 F. Supp. 2d 753, 763-64 (E.D. Va. 2013). Some have also factored in the defendant's potential to earn good time credits when calculating how much time the defendant is likely to be credited with having already served at sentencing. *See, e.g.*, *White*, 620 F.3d at 414-15; *Duncan*, 968 F. Supp. 2d at 763-64.

The estimates employed by courts in this context span a wide range, and the Fifth Circuit has articulated no standard for what may and may not be properly considered in conducting this analysis. In the January M&O, the Court compared Mouton's potential maximum sentence to the time already detained, the time it may take to restore Mouton to competency, the time to transfer him to and from the treating facility, and the time to adjudicate his case. ECF No. 108 at 8. As the government notes, the Court has some control over factors like the time needed to adjudicate Mouton's case post-restoration. However, that is not grounds for the Court to ignore that factor in estimating the length of Mouton's potential pretrial detention.[3] Nor has the government cited any instance in which a court held that it was improper to include estimates similar to those employed

---

[3] The government also argues that the Court can control the time it provides for Mouton's treatment. As explained in the January M&O, witnesses at the *Sell* hearing testified that it might take as long as 12 months for medication to restore Mouton to competency. ECF No. 108 at 6. Although the Court has the power to order a shorter treatment period, Mouton might not be restored to competency in a shorter period. Thus, the fact that the Court has the ability to order a shorter period of involuntary medication has no bearing on its conclusion that it might take up to 12 months for medication to be effective.

here. To the contrary, in *United States v. Cardenas-Castaneda*, the court similarly considered that it might take "up to twelve months to restore Defendant to competency" in addition to the "the over fourteen months Defendant has already been confined," "the time to transport Defendant back to El Paso (in light that it took five months to transport Defendant from El Paso to the facility)," and "the time to adjudicate Defendant's case." No. EP21CR00663FMATB, 2022 WL 2063731, at *4 (W.D. Tex. June 8, 2022). In consideration of those factors, the court concluded that the amount of time "Defendant could be confined is upwards of three or four years before the case is adjudicated." *Id.*

The government also takes issue with the January M&O's estimate of how long it may take to transfer Mouton to and from USMCFP Springfield, the facility where he would receive treatment. These estimates were based on how long it took to admit him to USMCFP Springfield initially. With its Motion for Reconsideration the government has provided a declaration from Dr. Dia B. Boutwell, the Chief of the Psychological Evaluations section for the Federal Bureau of Prisons. ECF No. 110-2. Boutwell opines that if the Court were to order involuntary medication, Mouton "could be admitted to USMCFP Springfield without the delay involved in his original 18 U.S.C. §4241(d)(1) admission." *Id.* ¶ 4.

These assurances are well taken. However, even modifying the original estimate to account for only a month or two per transfer in light of Boutwell's declaration, Mouton's case might still take upwards of two years to adjudicate following an order for involuntary medication. *See* ECF No. 108 at 8 n.3. Insofar as he has been detained now for 37 months, this places his potential pretrial confinement at over five years. The Court finds that this constitutes a "significant amount of time" such that the governments interest in prosecution is diminished. *Sell*, 539 U.S. at 180; *see*

*also Cardenas-Castaneda*, 2022 WL 2063731, at *4 (finding confinement of three to four years to constitute a "significant portion" of the defendant's potential ten-year maximum sentence).

### c. Impact of Second Amendment Litigation on the Government's Interest

In January M&O, the Court noted that the unstable constitutional landscape surrounding felon in possession laws following the Supreme Court's decision in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022) may further lessen the government's interest in prosecuting under such laws. The government argues that conclusion was in error. Upon reconsideration, the Court agrees. Fifth Circuit precedent upholding the constitutionality of 18 U.S.C. § 922(g)(1), the statute Mouton is charged under, remains binding. *See United States v. Scroggins*, 599 F.3d 433, 451 (5th Cir. 2010); *see also United States v. Mosely*, No. CR H-22-620, 2023 WL 4765596, at *3 (S.D. Tex. July 26, 2023) ("The Fifth Circuit may choose to revisit its § 922(g)(1) jurisprudence if given the opportunity. But its existing precedents bind this court. Those precedents affirm the constitutionality of § 922(g)(1)."). Thus, the government's interest in prosecuting crimes under § 922(g)(1) is unaffected by recent developments in Second Amendment jurisprudence.

However, as the Court noted in the January M&O, the amount of time Mouton has already served is independently sufficient to undermine the government's interest in prosecution. *See* ECF No. 108 at 9. Thus, this modification does not disturb the Court's conclusion that the government's interest in prosecuting Mouton is insufficient to overcome his liberty interest in being free from involuntary medication.

### III.   CONCLUSION

The government's Motion for Reconsideration is **GRANTED IN PART** and **DENIED IN PART.** The resulting modifications to the Court's prior findings do not affect the ultimate ruling

on the government's application to involuntarily medicate. As stated in the January M&O, the

government's application is **DENIED**.

      **IT IS SO ORDERED.**

      Signed at Houston, Texas on April 8, 2024.

Keith P. Ellison
United States District Judge